1   JOHN W. BUSBY II
    ATTORNEY AT LAW, P.C.
2   JOHN W. BUSBY II, SB# 83381
    ERIN SHEFFIELD SANCHEZ, SB# 238450
3   251 Lafayette Circle Suite 350
    Lafayette, CA 94549
4   Telephone:    (925) 299-9600
    Facsimile:    (925) 299-9608
5
    Attorneys for Plaintiff
6   GIRISH SOLANKI dba
    CIVIC CENTER MOTEL
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11

12  GIRISH SOLANKI dba CIVIC CENTER      ) Case No.: C 06 7004 SBA
    MOTEL,                               )
13                                       )
                  Plaintiff,             ) **STIPULATION FOR FILING OF**
14                                       ) **AMENDED COMPLAINT**
         v.                              )
15                                       )
    THE HARTFORD STEAM BOILER            )
16  INSPECTION AND INSURANCE             )
    COMPANY, a Connecticut corporation; and )
17  DOES 1-100, inclusive,               )
                                         )
18                Defendants.            )
                                         )
19  _____

20       The parties hereto, plaintiff, Girish Solanki dba Civic Center Motel, by and through its

21  attorney John W. Busby II, Esq. and defendant, The Hartford Steam Boiler Inspection and

22  Insurance Company, by and through its attorney Andrew Downs, Esq. hereby stipulate as

23  follows:

24       1.   Whereas during the course of discovery parties learned that defendant's belief that

25  repairs were made to the Civic Center Motel within the first two days following the fire at said

26  motel is inaccurate, and in fact repairs began on or about January 7, 2004; and

27       2.   Consequently, parties stipulate and agree that Girish Solanki dba Civic Center

28  Motel may file its amended complaint which will conform with evidence deduced during the

_____
STIPULATION FOR FILING OF AMENDED COMPLAINT

1   course of discovery.  A copy of the proposed Amended Complaint is attached hereto marked

2   **Exhibit "A"**.

3

4   Dated: June 7, 2007              JOHN W. BUSBY II
                                      ATTORNEY AT LAW, P.C.

5

6                                  By:

7                                  JOHN W. BUSBY IV
                                  ERIN SHEFFIELD SANCHEZ

8                                  Attorneys for Plaintiff
                                  GIRISH SOLANKI dba

9                                  CIVIC CENTER MOTEL

10  Dated: June 7, 2007              BULLIVANT HOUSER BAILEY PC

11

12                                  By:
                                  ANDREW B. DOWNS

13                                  Attorney for Defendant
                                  THE HARTFORD STEAM BOILER
                                  INSPECTION AND INSURANCE COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**[PROPOSED] ORDER**

2      The parties having stipulated and good cause appearing:

3  **IT IS HEREBY ORDERED** that the Plaintiff is granted leave to file its amended complaint

4  and that said amended complaint shall be the operative pleading in this matter.

5

6  DATED: __6/22/07_____                    _____

7                                             UNITED STATES DISTRICT COURT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

1  JOHN W. BUSBY II
   ATTORNEY AT LAW, P.C.
2  JOHN W. BUSBY II, SB# 83381
   ERIN  SHEFFIELD SANCHEZ, SB# 238450
3  251 Lafayette Circle Suite 350
   Lafayette, CA 94549
4  Telephone:     (925) 299-9600
   Facsimile:      (925) 299-9608
5
   Attorneys for Plaintiff
6  GIRISH SOLANKI dba
   CIVIC CENTER MOTEL
7

8                    UNITED STATES DISTRICT COURT
9                  NORTHERN DISTRICT OF CALIFORNIA
10                         OAKLAND DIVISION
11

12  GIRISH SOLANKI dba CIVIC CENTER        ) Case No.: C 06 7004 SBA
    MOTEL,                                 )
13                                         )
                   Plaintiff,              ) [PROPOSED] FIRST AMENDED
14                                         ) COMPLAINT FOR BREACH OF
         v.                                ) CONTRACT; BREACH OF COVENANT
15                                         ) OF GOOD FAITH AND FAIR DEALING;
    THE HARTFORD STEAM BOILER              ) DECLARATORY RELIEF
16  INSPECTION AND INSURANCE               )
    COMPANY, a Connecticut corporation; and )
17  DOES 1-100, inclusive,                 )
                                           )
18                 Defendants.             )
                                           )
19  _____

20

21      Plaintiff GIRISH SOLANKI dba CIVIC CENTER MOTEL alleges as follows:

22                        **GENERAL ALLEGATIONS**

23      1.      Plaintiff is an individual formerly doing business as Civic Center Motel, a

24              business located in Alameda County, California.  Plaintiff Solanki is a resident

25              of the City of Orange, County of Orange, California.

26      2.      Defendant, The Hartford Steam Boiler Inspection and Insurance Company

27              (hereinafter "Hartford"), is a corporation organized and existing under the laws

28

_____
AMENDED COMPLAINT

1      of the State of Connecticut and authorized by the California Insurance

2      Commissioner to transact business in the State of California, and was

3      transacting business in Alameda County as a property and casualty insurer.

4  3.    At all times herein mentioned, plaintiff was the owner of that certain real

5      property described as City Center Motel.

6  4.    On or about January 31, 2003, in consideration of the payment of an annual

7      premium made by plaintiff, defendants, by their duly authorized agent, delivered

8      its policy of insurance bearing number 6871055-00, hereinafter referred to as the

9      "Policy," wherein and whereby defendants insured plaintiff for the term from

10     January 22, 2003 to January 22, 2004.  A true and correct copy of the Common

11     Policy Declarations section of the Policy is attached hereto as **Exhibit "A"** and

12     made a part hereof.

13 5.    Plaintiff is informed and believes and thereon alleges that said Policy was sold

14     and delivered to the plaintiff in the State of California and that all premiums for

15     the Policy were paid in Alameda County California.

16 6.    Plaintiff is the named insured under the Policy.

17 7.    On or about January 4, 2004 at approximately 1:50 AM, a circuit breaker

18     shorted and caught fire at the Civic Center Motel.  Following is an excerpt of

19     the investigation report written by William Gurry, Field Claim Adjuster for

20     defendants:

21         On 1/4/04 at approximately 1:50 AM, electrical arcing occurred
           at the outside back electrical distribution panel. Fire department
22         came and tried to put out arcing. Their efforts did not help
           because arcing continued. The fire department called the utility
23         company (PG&E). Upon arrival, the utility disconnected power
           to the motel from another location in the street or down the
24         street. At that time, all people in the rooms had to evacuate the
           motel.
25

26 8.    PG&E refused to turn the power back on following the fire.  The utility stated

27     that plaintiff had a 200 AMP service and PG&E required a 400 AMP service.

28

AMENDED COMPLAINT         - 1 -

1         On or about January 7, 2004 repairs were performed at the Civic Center Motel

2         including pulling new electrical wiring from a main junction box that had to be

3         relocated from the roof to the front of the building.  Further repairs included

4         installing new conduit above and across the roof and trenching the parking lot to

5         add additional conduit to where the utility could install new cabling.

6    9.     Business operations at Civic Center Motel were suspended for 50 days due to

7         the aforementioned repairs at the direction of PG&E.

8    10.    A dispute has arisen between plaintiff and defendant in that plaintiff claims he is

9         entitled to damages due to repair costs and business income losses for the 50-

10         day period of repairs which were mandated by PG&E.  On the other hand,

11         defendant claims the repair costs and business income losses were the result of

12         code upgrades and therefore not covered losses.  A true and correct copy of the

13         Business Income Coverage Form section of the Policy is attached hereto as

14         **Exhibit "B"** and made a part hereof.

15    11.    On or about February 4, 2004, defendant sent plaintiff a letter stating that the

16         occurrence met the Policy's definition of an accident and defendant admitted

17         liability for the one day it took for the distribution panel to be replaced and

18         repaired as well as for business income losses for one day.  No repairs, however,

19         were made during the first two days following the fire.  Despite this admission,

20         and despite the fact that defendants have had the records supporting plaintiff's

21         claim for months, defendant has failed and refused to pay even though plaintiff

22         has provided defendants with the necessary documents on at least two separate

23         occasions.  A true and correct copy of the February 4, 2004 letter is attached

24         hereto as **Exhibit "C"** and made a part hereof.

25    12.    With regard to business income loss, defendant admits liability for the losses of

26         income incurred during the time period to repair the original panel.  No repairs,

27         however, were made during the first two days following the fire.  Despite this

28

---

AMENDED COMPLAINT

- 2 -

admission of liability, defendant has failed and refused to pay even though plaintiff has provided defendants with the necessary documents on at least two separate occasions.

13. Defendant has claimed that according to the terms and conditions of the Policy which exclude coverage for the enforcement of any ordinance or law, it was not liable for the repairs required by PG&E, characterizing them as "code upgrades." A true and correct copy of the Causes of Loss – Special Form section of the Policy is attached hereto as **Exhibit "D"** and made a part hereof.

14. Defendant has stated that plaintiff's Policy does not cover "code upgrades." However, PG&E did not characterize the repairs they required of plaintiff as "code upgrades," nor did plaintiff ever refer to the repairs as "code upgrades."

15. Plaintiff maintains that the repairs mandated by PG&E were not "code upgrades" within the meaning of the Policy, and as such, defendant, is liable for all of the damages plaintiff incurred making the required repairs, as well as the business income losses for the 50-day period.

16. Plaintiff was instructed by defendant in the February 4, 2004 letter to provide defendant with invoices for the original work that had been performed to repair the 200 AMP panel. Furthermore, documentation showing business income losses for the night of the incident were requested by defendants as well as profit and loss statements for the months of December 2003 and January 2003.

17. No repairs were made during the first two days following the fire, but plaintiff provided the documents requested by defendant to process plaintiff's claim including invoices from the 50-day period in which the repairs were made and documentation substantiating the business income losses during the 50-day shutdown period. These documents support plaintiff's version of the events.

18. On or about December 12, 2005, plaintiff for the second time provided the

1   documents requested by defendant to process plaintiff's claim including

2   invoices from the 50-day period in which the repairs were made and

3   documentation showing business income losses substantiating the 50-day

4   shutdown period. These documents support plaintiff's version of the events.

5   19.   On or about June 19, 2006, following numerous letters and telephone calls on

6   behalf of plaintiff in the intervening months to defendant requesting a

7   conference to discuss resolution of the claim, defendant sent another letter to

8   plaintiff stating that it had received no invoices for the initial repair of the 200

9   AMP panel and no documentation supporting the Business Income losses for the

10   one-day period required to repair and replace the panel. In this letter, defendant

11   also claimed that plaintiff's file was closed. At no point during two years of

12   communication and correspondence was plaintiff or plaintiff's counsel informed

13   that plaintiff's file was purportedly closed. In fact, quite to the contrary, at all

14   times defendant purported to be involved in adjusting the loss.

15   ## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

16

17   20.   Plaintiff refers to and incorporates paragraphs 1 through 19, inclusive, as if fully

18   set forth herein.

19   21.   On or about January 4, 2004, while the policy was in full force and effect, the

20   above described property was damaged by fire when a circuit breaker shorted

21   and caught fire, to plaintiff's loss and damage.

22   22.   Defendant breached the agreement between the parties in that defendant has not

23   paid plaintiff in full and there is currently due, owing, and unpaid the sum of

24   $71,707.92, plus interest thereon according to proof.

25   23.   Plaintiff has performed all conditions of the policy on his part to be performed

26   and, in accordance with the terms of the policy, gave defendant due and timely

27   written notice of and proof of the loss in the form of incident reports, repair and

28

AMENDED COMPLAINT

- 4 -

1    replacement invoices, and business loss statements on two separate occasions.

2    24.   Plaintiff has provided defendant with documentation necessary to process the

3          claim on two separate occasions but defendant has failed, and continue to fail, to

4          pay plaintiff that sum now due, owing, and unpaid to plaintiff.  This sum

5          includes the amount for which defendant has admitted liability but have failed

6          and refused to pay for over two and a half years, as well as the total damages

7          incurred during the 50-day shutdown period which plaintiff maintains defendant

8          is liable.

9    25.   As a proximate result of defendant's failure and refusal herein alleged, plaintiff

10         has been damaged in the sum of $71,707.92, with interest on that sum at the

11         legal rate.

12                        **SECOND CAUSE OF ACTION**
        **(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)**
13

14   26.   Plaintiff refers to and incorporates paragraphs 1 through 25, inclusive, as if fully

15         set forth herein.

16   27.   There is a dispute between plaintiff and defendant as to which damages

17         defendant is liable.  As mentioned above, plaintiff maintains that, because those

18         repairs mandated by PG&E were just that, repairs, not "code upgrades",

19         defendant is liable to plaintiff for all of the costs incurred in making those

20         necessary repairs during the 50-day repair period.  Plaintiff further maintains

21         that defendant is liable for business income losses for the entire 50-day

22         shutdown period.  Defendant, on the other hand, has only admitted liability for

23         the first day following the fire, on which no repairs were made.

24   28.   Despite the aforementioned dispute, defendant has, since February 2004,

25         admitted liability for the one day repair and/or replacement of the distribution

26         panel, although no repairs were made on that date.  Defendant has had in its

27         possession for months records which support plaintiff's business income losses

28

---

AMENDED COMPLAINT                                                    - 5 -

1     for the undisputed period. Defendant has nevertheless failed and refused to pay

2     even the undisputed liability on plaintiff's claim.

3     29.   Plaintiffs are informed and believe and thereon allege that defendant breached

4           the implied covenant of good faith and fair dealing arising out of the contract in

5           connection with the fire and subsequent replacement and repairs of the electrical

6           system at Civic Center Motel, in the following respects:

7           A.    The defendant unreasonably and without proper cause failed and refused

8                 to pay plaintiff for its claim.

9           B.    This unreasonable failure and refusal to pay occurred despite defendant's

10                undisputed liability which defendant initially admitted in a February 4,

11                2004 letter to plaintiff. Defendant admitted liability attached to the

12                initial repair completed by the electrician on the first day, which restored

13                power to the motel, but no repairs were made immediately following the

14                fire which restored power to the motel. The insurance company further

15                admitted that plaintiff's insurance policy extends coverage to business

16                income losses accrued during the one day period of restoration, yet they

17                have refused to pay plaintiff.

18          C.    This refusal to pay has occurred despite the fact that plaintiff has twice

19                provided defendant with the documents necessary to process the claim,

20                namely the invoices from the repair by the electrician, as well as the

21                business income documentation. With respect to business income,

22                documentation showing business losses for the night of the incident in

23                addition to profit and loss statements for the months of December 2003

24                and January 2003 have been twice provided to defendants. Plaintiff has

25                produced these materials to defendant on two separate occasion, for the

26                first time in or around October 2004 and again in December 2005.

27                Nevertheless, defendant claims that they have neither the invoices for the

28

AMENDED COMPLAINT                                                          - 6 -

1                replacement and repairs nor business income documentation for the

2                period of the replacement.

3     30.    In defendant's letter to plaintiff on March 10, 2004, Field Claim Adjuster

4                William Gurry stated that if information from plaintiff was not provided to

5                defendant within 30 days, defendant would assume that plaintiff is no longer

6                interested in pursuing this loss and would close all of its files on the matter. In

7                September 2004, after being informed of the incident and provided with the

8                relevant correspondence, plaintiff's counsel notified defendant through its agent

9                William Gurry that plaintiff was being represented in the matter and requested

10               to be advised as to what documentation was required to support plaintiff's

11               claim. Defendant responded to plaintiff counsel's request, and plaintiff

12               thereafter provided those documents which were requested. Plaintiff's counsel

13               was at no time told that plaintiff's file was purportedly closed. Correspondence

14               between plaintiff's counsel and defendant continued for the next several months

15               from September 2004 through Fall 2005, and neither plaintiff nor plaintiff's

16               counsel was ever told during this period that plaintiff's file had been purportedly

17               closed. Throughout Spring 2006, following numerous letters and telephone

18               calls on behalf of plaintiff in the intervening months to defendant requesting a

19               conference to discuss resolution of the claim, plaintiff was unable to contact

20               defendants. Finally, on or about June 19, 2006, defendant sent another letter to

21               plaintiff stating that it had not received the requested documentation supporting

22               plaintiff's loss, although plaintiff had submitted them twice, and that plaintiff's

23               file had been closed as outlined in the March 10, 2004 letter. This was the first

24               time that plaintiff was made aware that his file had been purportedly closed.

25     31.    Plaintiff is informed and believes and thereon alleges that defendant's claim that

26               plaintiff's file has been closed for over two years, which plaintiff was only

27               recently made aware of, is an attempt to further delay payment to plaintiff.

28

AMENDED COMPLAINT                           - 7 -

32.  Defendant's delayed payment breaches the implied covenant because its conduct frustrates plaintiff's right to receive the benefits of the contract in prompt compensation for losses.

33.  The refusal and failure by defendant to pay the undisputed amount of liability under the policy was done by the defendant without reasonable cause. Defendant knew that it had a duty to pay benefits owed to plaintiff, yet refused to provide payment. As a direct and proximate result of the unreasonable conduct of the defendant, plaintiff has been required to retain attorneys to obtain benefits due to them under the Policy.

34.  As a direct result of the tortious conduct of the defendant, plaintiff was damaged and injured. Plaintiff is therefore entitled to recover:

     A.  Benefits due under the Policy, together with interest thereon from the date the benefits were due;

     B.  Reasonable attorney fees incurred by plaintiff in obtaining policy benefits in an amount to be proved at the time of trial.

35.  In committing the alleged act, defendant acted with oppression, fraud, and malice. All the alleged acts were performed or ratified by defendant's managerial employees, who acted with knowledge that defendant's conduct would cause plaintiff harm. Plaintiff is therefore entitled to recover punitive damages.

### THIRD CAUSE OF ACTION
### (DECLARATORY RELIEF)

36.  Plaintiffs refer to and incorporate paragraphs 1 through 35, inclusive, as if fully set forth herein.

37.  An actual controversy has arisen between the parities hereto with respect to the amounts due under the Policy. As such, plaintiff is entitled to a declaration of the rights, duties, and obligations of plaintiff and defendant, and to have this

AMENDED COMPLAINT

- 8 -

1    court render its judgment of declaratory relief regarding the amounts due under

2    those provisions of the policy.

3    38.    A judicial declaration and adjudication is necessary and appropriate such that

4    the parties may ascertain their rights and responsibilities.

5    **PRAYER**

6    WHEREFORE, plaintiff prays for judgment against defendant, as follows:

7    1.    On the first cause of action:

8        a.    For damages according to proof for breach of contract in the sum of

9            $71,707.92;

10       b.    For prejudgment interest at the legal rate in an amount to be proved at

11           the time of trial;

12       c.    For costs of suit incurred herein;

13       d.    For such other and further relief as the court may deem just and proper;

14   2.    On the second cause of action:

15       a.    For damages according to proof for breach of contract in the sum of

16           $71,707.92;

17       b.    For prejudgment interest at the legal rate in an amount to be proved at

18           the time of trial;

19       c.    Attorney fees and costs incurred in obtaining the benefits owed under the

20           policy issued by defendant to plaintiff;

21       d.    Punitive damages in an amount appropriate to punish and set an example

22           of defendant;

23       e.    For costs of suit incurred herein;

24       f.    For such other and further relief as the court may deem just and proper;

25   3.    On the third cause of action:

26       a.    That this court enter its judgment of declaratory relief regarding the

27           amounts due under the aforementioned portions of the policy;

28

AMENDED COMPLAINT

b. For costs of suit incurred herein; and

c. For such other and further relief as the court may deem just and proper.

Dated: June 8, 2007

JOHN W. BUSBY II
ATTORNEY AT LAW, P.C.

By: _____
JOHN W. BUSBY II
ERIN SHEFFIELD SANCHEZ
Attorneys for Plaintiff
GIRISH SOLANKI dba
CIVIC CENTER MOTEL

AMENDED COMPLAINT

– 10 –

EXHIBIT "A"

POLICY NUMBER: 6871055-00                    COMMERCIAL PACKAGE POLICY

# SIRIUS AMERICA INSURANCE COMPANY



## Common Policy Declarations

| | |
|---|---|
| Named Insured: | Girish Solanki<br>DBA: Civic Center Motel |
| Address: | 425 24th Street<br>Richmond  CA  94804 |
| Policy Period: | From 01/22/2003  12:01 A.M. Standard Time        To 01/22/2004  12:01 A.M. Standard Time |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| | |
|---|---|
| Section I Coverages | Included |
| Section II Coverages | Included |
| Section III Coverages | Included |
| Section IV Coverages | Excluded |

| | | |
|---|---|---|
| Policy Premium | $ | 9,733.00 |
| CIGA Fee | $ | 194.66 |
| Total Premium | $ | 9,927.66 |

Form of Business:     Individual

Forms applicable to all Coverage Parts:     See Attached Schedule of Forms and Endorsements.

POLICY PREMIUM $ 9,927.00

FEE $ 200.00

TOTAL AMOUNT $ 10,127.00

Countersigned _____          Date   01/31/2003

Declaration (12/00)

Insured Copy

EXHIBIT "B"

POLICY NUMBER:     6871055-00                                    COMMERCIAL PROPERTY

# BUSINESS INCOME COVERAGE FORM
# (AND EXTRA EXPENSE)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION G — DEFINITIONS.

## A. COVERAGE

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss.

### 1. Business Income

Business Income means the:

a.  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

b.  Continuing normal operating expenses incurred, including payroll.

### 2. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

### 3. Additional Coverages

a.  **Extra Expense.**

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(1) We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations":

(a) At the described premises; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Costs to equip and operate the replacement or temporary locations.

(2) We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations".

(3) We will pay any Extra Expense to:

(a) Repair or replace any property; or

(b) Research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

b.  **Civil Authority.** We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to two consecutive weeks from the date of that action.

c.  **Alterations and New Buildings.** We will pay for the actual loss of Business Income you sustain due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**d. Extended Business Income.** We will pay for the actual loss of Business Income you incur during the period that:

(1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(2) Ends on the earlier of:

(a) The date you could restore your business, with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in **(1)** above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**4. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay for loss under this Extension is 10% of the Limit of Insurance for Business Income shown in the Declarations, but not more than $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**B. EXCLUSIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C. LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

**1.** Alterations and New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

**D. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

You must see that the following are done in the event of loss:

**a.** Notify the police if a law may have been broken.

**b.** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

    Copyright, ISO Commercial Risk Services, Inc., 1983, 1987    **CP 00 30 07 88**

c. As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

e. Permit us to inspect the property and records proving the loss.

Also permit us to take samples of damaged property for inspection, testing and analysis.

f. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

g. Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

h. Cooperate with us in the investigation or settlement of the claim.

i. Resume all or part of your "operations" as quickly as possible.

3. **Limitation – Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss or damage to Electronic Media and Records after the longer of:

a. 60 consecutive days from the date of direct physical loss or damage; or

b. The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to Extra Expense

Example No. 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 – September 1. Loss during the period September 2 – October 1 is not covered.

Example No. 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 – September 29 (60 consecutive days). Loss during the period September 30 – October 15 is not covered.

4. **Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no loss or damage occurred;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and.

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

### 5. Loss Payment

We will pay for covered loss within 30 days after we receive the sworn statement of loss, if:

a. You have complied with all of the terms of this Coverage Part; and

b. (1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

### 6. Resumption Of Operations

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

## E. ADDITIONAL CONDITION

### Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) All operating expenses, including payroll expenses,

that would have been earned (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in step 1; and

3. Multiply the total amount of the covered loss by the figure in Step 2.

The amount determined in step 3 is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Example No. 1 (Underinsurance):

| When | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $400,000 |
|---|---|---|
| | The Coinsurance percentage is | 50% |
| | The Limit of Insurance is | $150,000 |
| | The amount of loss is | $80,000 |

Step 1: $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 divided by $200,000 = .75

Step 3: $ 80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987 CP 00 30 07 88

Example No. 2 (Adequate Insurance):

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $400,000 |
| | The Coinsurance percentage is | 50% |
| | The Limit of Insurance is | $200,000 |
| | The amount of loss is | $80,000 |

Step 1:     $400,000 x 50% = $200,000

(The minimum amount of insurance to meet your Coinsurance requirements)

Step 2:     $200,000 divided by $200,000 = 1.00

Step 3:     $80,000 x 1.00 = $80,000

We will cover the $80,000. No penalty applies.

This condition does not apply to the Extra Expense Additional Coverage.

## F. OPTIONAL COVERAGES

If shown in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period Of Indemnity**

   a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

   b. The most we will pay for loss of Business Income is the lesser of:

      (1) The amount of loss sustained during the 120 days immediately following the direct physical loss or damage or

      (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit Of Indemnity**

   a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

   b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the direct physical loss or damage is:

      (1) The Limit of Insurance, multiplied by

      (2) The fraction shown in the Declarations for this Optional Coverage.

Example:

| When: | The Limit of Insurance is | $120,000 |
| | The fraction shown in the Declarations for this Optional Coverage is | 1/4 |

The most we will pay for loss in each period of 30 consecutive days is:

$120,000 x 1/4 = $30,000

if, in this example, the actual amount of loss is:

| Days | 1 - 30 | $40,000 |
| Days | 31 - 60 | 20,000 |
| Days | 61 - 90 | 30,000 |
| | | $90,000 |

We will pay:

| Days | 1 - 30 | $30,000 |
| Days | 31 - 60 | 20,000 |
| Days | 61 - 90 | 30,000 |
| | | $80,000 |

The remaining $10,000 is not covered.

3. **Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/Work Sheet must be made a part of this policy and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) An agreed Value must be shown in the Declarations or on the Work Sheet. The Agreed Value should be at least equal to:

         (a) The Coinsurance percentage shown in the Declarations; multiplied by

         (b) The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

   b. The Additional Condition, Coinsurance, is suspended until:

      (1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

    (1) Within 12 months of the effective date of this Optional Coverage; or

    (2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

    (1) The Business Income Limit of Insurance; divided by

    (2) The Agreed Value.

Example:

| When: | The Limit of Insurance is | $100,000 |
|---|---|---|
| | The Agreed Value is | $200,000 |
| | The amount of loss is | $80,000 |

Step (a): $100,000 divided by $200,000 = .50

Step (b): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under paragraph A.3.(d), Extended Business Income, the number "30" in subparagraph (2)(b) is replaced by the number shown in the Declarations for this Optional Coverage.

## G. DEFINITIONS

**1.** "**Finished Stock**" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "**Operations**" means your business activities occurring at the described premises.

**3.** "**Period of Restoration**" means the period of time that:

a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

    (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

CP 00 30 07 88

# EXHIBIT "C"



Western Region Office     P.O. Box 456
The Hartford     El Verano, CA 95433
Steam Boiler Inspection     Tel (707) 935-0411
and Insurance Company     Fax (707) 933-0946

February 4, 2004

Ken Solanki
Girish Solanki / DBA: Civic Center Motel
4701 Ewing Road
Castro Valley, CA 94546

| | | |
|---|---|---|
| RE: | POLICY NO.: | 6871055-00 / HSB 1000600 |
| | INSURED: | Girish Solanki DBA: Civic Center Motel |
| | LOCATION: | 425 24th Street, Richmond, CA 94804 |
| | DATE OF LOSS: | 1/4/04 |
| | CLAIM NO.: | 2004-7449-68 / HSB PH-00120085 |
| | OBJECT/OCCURRENCE: | Electrical Distribution Panel / Arcing |

Dear Mr. Solanki,

We have completed our investigation into the captioned occurrence and found that an "accident" as defined by the policy has occurred. Therefore, our liability will be involved.

Our investigation revealed on 1/4/04 at approximately 1:50 AM, electrical arcing occurred at the outside back electrical distribution panel. Fire department came and tried to put out arcing. Their efforts did not help because arcing continued. The fire department called in the utility power company (P.G. & E.). Upon arrival, the utility disconnected power to the motel from another location in the street or down the street. At that time, all people in the rooms had to evacuate the motel.

Repair was made by the insured within one day, which included installing a new distribution panel at the back of the motel. The electrician said the repair put the equipment in the same condition or better than before the occurrence. On 1/29/04, the on-site electrician confirmed this by saying he had completed repair in one-day, however, the utility caused the extensive delay by requiring a code upgrade. However, the utility would not turn back on the power and said their repair would not be adequate because they said it was out of code. They told Mr. Solanki the work must be upgraded to code, which took nearly one month to complete. The code upgrade included pulling new electrical wiring from a main junction box that had to be relocated from the roof to the front of the building. It also included installing new conduit above and across the roof and trenching the parking lot to add additional conduit to where the utility could install new cabling.

With respect to all the extra work and expense done related to the code upgrade and for any business income lost due to the delay in performing the code upgrade work, please be advised your policy states the following in part:

Form CF 497 (6-95)

B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.



Western Region Office       P.O. Box 456
The Hartford                El Verano, CA  95433
Steam Boiler Inspection     Tel (707) 935-0411
and Insurance Company       Fax (707) 933-0946

a. ORDINANCE OR LAW
The enforcement of any ordinance or law:

(1) Regulating the construction, use or repair of any property; or
(2) Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance or Law, applies whether the loss results from
(1) An ordinance or law that is enforced even if the property has not been damaged; or
(2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

In accordance with the "valuation" section of the policy, our liability will attach to the lesser of the costs to repair or replace damaged equipment with like kind, size, quality and capacity.  In this case, our liability will extend to the initial repair done by the electrician that was completed the first day, which restored power back to the motel (although P.G.&E. would not connect utility power due to the code upgrade).  There is a policy deductible of $1,000.00.

Additionally, your policy extends coverage to Business Income losses accrued during the period of restoration until the electrical equipment was initially repaired, which took approximately one day to perform.

To expedite settlement, please submit all invoices and documentation in connection with this loss to our office that relates to the initial work done that put your electrician. These documents should be in sufficient detail to differentiate between repairs that were made necessary due to the occurrence, and those of a maintenance or betterment type nature (code upgrade).

With respect to Business Income, please provide documentation showing Business Income losses for the night of 1/3/04.  Additionally, please provide profit and loss statements for the months of December 2003 and January 2003.

Once this information is received and reviewed, we will contact you as respects the total extent of our liability in this matter.

In the meantime, should you have any questions, or if I may be of further assistance, please contact me at (707) 935-0411.

Sincerely,

William Gurry,
Field Claim Adjuster

cc:     Mark Bigonger                    Fax: 714-228-7879
        PRM Insurance
        P.O. Box 1328
        La Mirada, CA  90637

EXHIBIT "D"

POLICY NUMBER:  6871055-00

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section F. – Definitions.

## A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means **RISKS OF DIRECT PHYSICAL LOSS** unless the loss is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations;

that follow.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance or Law**

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance or Law, applies whether the loss results from:

   (1) An ordinance or law that is enforced even if the property has not been damaged; or

   (2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (2) Volcanic eruption, explosion or effusion. But if volcanic eruption explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   **c. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

   **d. Nuclear Hazard**

   Nuclear reaction or radiation, or radioactive contamination, however caused.

   But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

Copyright, ISO Commercial Risk Services, Inc., 1994

**e.  Utility Services**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in paragraph **B.4.a.(1)** applies to these coverages.

**f.  War And Military Action**

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.  Water**

(1)  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2)  Mudslide or mudflow;

(3)  Water that backs up or overflows from a sewer, drain or sump; or

(4)  Water under the ground surface pressing on, or flowing or seeping through:

(a)  Foundations, walls, floors or paved surfaces;

(b)  Basements, whether paved or not; or

(c)  Doors, windows or other openings.

But if Water, as described in g.(1) through g.(4) above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**2.**  We will not pay for loss or damage caused by or resulting from any of the following:

**a.**  Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

**b.**  Delay, loss of use or loss of market.

**c.**  Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.**  (1)  Wear and tear;

(2)  Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3)  Smog;

(4)  Settling, cracking, shrinking or expansion;

(5)  Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(6)  Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7)  The following causes of loss to personal property:

(a)  Dampness or dryness of atmosphere;

(b)  Changes in or extremes of temperature; or

(c)  Marring or scratching.

But if an excluded cause of loss that is listed in **2.d. (1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.**  Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f.  Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

g.  Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1)  You do your best to maintain heat in the building or structure; or

(2)  You drain the equipment and shut off the supply if the heat is not maintained.

h.  Dishonest or criminal act by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1)  Acting alone or in collusion with others; or

(2)  Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

i.  Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j.  Rain, snow, ice or sleet to personal property in the open.

k.  Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

l.  Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

3.  We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage, caused by that Covered Cause of Loss.

a.  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c.  Faulty, inadequate or defective:

(1)  Planning, zoning, development, surveying, siting;

(2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)  Materials used in repair, construction, renovation or remodeling; or

(4)  Maintenance;

of part or all of any property on or off the described premises.

4.  **Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

a.  **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

We will not pay for:

(1)  Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

(2)  Any loss caused by or resulting from:

(a)  Damage or destruction of "finished stock"; or

(b)  The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

    Copyright, ISO Commercial Risk Services, Inc., 1994

(3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(4) Any increase of loss caused by or resulting from:

   (a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

(5) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(6) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

(1) Paragraph B.1.a. Ordinance or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

   (a) Your cancelling the lease;

   (b) The suspension, lapse or cancellation of any license; or

   (c) Any other consequential loss.

**c. Legal Liability Coverage Form**

(1) The following Exclusions do not apply to insurance under this Coverage Form:

   (a) Paragraph B.1.a., Ordinance or Law;

   (b) Paragraph B.1.c., Governmental Action;

   (c) Paragraph B.1.d., Nuclear Hazard;

   (d) Paragraph B.1.e., Utility Services; and

   (e) Paragraph B.1.f., War and Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

   (a) **Contractual Liability**

   We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

     (i) Your assumption of liability was executed prior to the accident; and

     (ii) The building is Covered Property under this Coverage Form.

   (b) **Nuclear Hazard**

   We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**C. LIMITATIONS**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

  **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

Copyright, ISO Commercial Risk Services, Inc., 1994

CP 10 30 06 95

c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

(1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

(2) Business Income coverage or Extra Expense coverage.

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

g. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay more than $500 in any one occurrence for loss of or damage to glass that is part of a building or structure, regardless of the number of panes, plates or similar units of glass. Subject to this $500 aggregate, we will not pay more than $100 for any one pane, plate, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter.

However, this limitation does not apply to:

a. Loss or damage by the "specified causes of loss", except vandalism; or

b. Business Income coverage or Extra Expense coverage.

3. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell or other data processing, recording or storage media, and other records.

b. Animals, and then only if they are killed or their destruction is made necessary.

c. Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

(1) Glass that is part of a building or structure;

(2) Containers of property held for sale; or

(3) Photographic or scientific instrument lenses.

d. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

(1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

(2) To Business Income coverage or to Extra Expense coverage.

4. The special limit shown for each category, a. through d., is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

a. $2,500 for furs, fur garments and garments trimmed with fur.

b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $2,500 for patterns, dies, molds and forms.

 Copyright, ISO Commercial Risk Services, Inc., 1994

d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, C.4., does not apply to Business Income coverage or to Extra Expense coverage.

5. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

## D. ADDITIONAL COVERAGE – COLLAPSE

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in D.1. through D.5. below.

1. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form, if the collapse is caused by one or more of the following:

a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of people or personal property;

e. Weight of rain that collects on a roof;

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in D.1.a. through D.1.e., we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

2. If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

a. The personal property which collapses is inside a building; and

b. The collapse was caused by a cause of loss listed in D.1.a. through D.1.f. above.

3. With respect to the following property:

a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in D.1.b. through D.1.f., we will pay for loss or damage to that property only if:

a. Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

b. The property is Covered Property under this Coverage Form.

4. Collapse does not include settling, cracking, shrinkage, bulging or expansion.

5. This Additional Coverage – Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

## E. ADDITIONAL COVERAGE EXTENSIONS

1. **Property In Transit.** This Extension applies only to your personal property to which this form applies.

a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

Copyright, ISO Commercial Risk Services, Inc., 1994

b. Loss or damage must be caused by or result from one of the following causes of loss:

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

(3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c. The most we will pay for loss or damage under this Extension is $1000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder or Molten Material Damage.** If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

F. **DEFINITIONS**

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

a. The cost of filling sinkholes; or

b. Sinking or collapse of land into man-made underground cavities.

2. Falling objects does not include loss or damage to:

a. Personal property in the open; or

b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.